UNITED STATES of America

v.

Richard Allen GANT, John Roger Casquilla, David Wayne Hill, Deborah Corinne Schneider.

Cr. No. H–83–151.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 24, 1984.

Order May 9, 1984.

in violation of 21 U.S.C. §§ 841(a)(1)[2] and 846[3] (1976). The events alleged in the indictment occurred on or about October 31, 1980. Defendants Gant and Schneider have filed motions to suppress evidence obtained as a result of a search warrant purportedly insufficient to sustain a determination of probable cause for its issuance. Specifically, the motions seek to exclude the controlled substances and any other derivative evidence obtained during the search conducted under the authority of the above described search warrant. A suppression hearing was held on November 30, 1983, to determine the facts surrounding both the issuance of the warrant and the subsequent search which led to defendants' arrest. Having considered the facts adduced at the suppression hearing, as well as the memoranda of law submitted by counsel, the Court is of the opinion that the motions should be granted for the reasons stated below.

Samuel Longoria, Asst. U.S. Atty., Houston, Tex., for plaintiff.

Gerald Goldstein, San Antonio, Tex., Edward Mallett, Houston, Tex., for defendant Gant.

Thomas Berg, Houston, Tex., for defendant Schneider.

## ORDER

CARL O. BUE, Jr., District Judge.

Defendants, Richard Allen Gant and Deborah Corinne Schneider, among others,[1] are charged in a two count indictment with conspiracy to violate the narcotics laws and possession with intent to distribute cocaine

### Facts

On October 31, 1980, a search warrant was issued for the search of the residence described as "11006 Francoise, Houston, Texas, and for the arrest of Richard Allen Gant, Deborah Schneider and Carlos Ivan Orozco." On executing the search warrant, agents discovered approximately five pounds of 90% pure cocaine.

The warrant pursuant to which the search took place was issued on the basis of the affidavit of Officer J.M. Martinez, a Harris County Deputy Sheriff. The affidavit set out the personal observations of Martinez and other agents as well as information obtained by Martinez from an anon-

---

**1.** Although there were others who were arrested, only defendants Gant and Schneider now challenge the illegality of the arrest, search and seizure.

**2.** Title 21, United States Code, Section 841(a)(1) states in pertinent part that:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

**3.** Title 21, United States Code, Section 846 states in pertinent part that:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

ymous informant, all of which allegedly gave the officers probable cause to believe that defendants Gant, Schneider and Orozco were in possession with the intent to deliver the controlled substance cocaine.

The affidavit first set out that in early October, 1980, Officer Martinez, who had served as a narcotics officer for 9 years, spoke with Mr. Rosenthal, the major drug offender prosecutor for Harris County, Texas. During that conversation, Rosenthal spoke of a conversation he had had with an attorney who was representing a person indicted for possession of cocaine. As an attempt to secure a low recommendation on a plea bargain agreement, that defendant told his attorney that he bought cocaine on a regular basis, and that Richard Gant was a cocaine dealer whose telephone number was 729–1956 and whose vehicle license plates were entitled "I'M RICH."

According to the affidavit, Rosenthal's information substantially confirmed a conversation Martinez had had with an anonymous informant. In that conversation, the informant, an admitted cocaine user, told Officer Martinez that he had known Mr. Gant for some time because they both purchased drugs from the same source. The informer, who knew Gant's address, thought that Gant dealt mostly with Methaqualone tablets, dressed well, and drove a luxury car with personalized license plates entitled "I'M RICH." The informer stated further that Gant, Don Clemments and "Carlos" worked together in Gant's cocaine distribution network. The affidavit disclosed that Gant, bragging to the informer about his activities as a dealer, explained that Carlos would make arrangements for the cocaine to be at a particular place in Florida after which Gant would drive to Florida with the necessary cash to pick it up. Distribution allegedly occurred immediately upon Gant's return to Houston.

The affidavit set out that on or about October 10, 1980, Martinez, with the assistance of the United States Department of Justice Drug Enforcement Administration (hereinafter "D.E.A."), began intensive surveillance of Gant. The officers had little success in their attempts to follow him, but on one occasion saw Gant and "Carlos" Orozco at Gant's residence. On another occasion, Gant was followed to a local bank where he was observed withdrawing an unknown quantity of money in an extended transaction involving two tellers.

According to the affidavit, on October 28, 1980, Agent Parsons, told Officer Martinez that Donald Clemments, Jr., alias "Richard Gant", had been arrested in San Diego for possession of one ounce of high purity cocaine as he was boarding an airplane traveling to Houston.[4] Agent Parsons received his information about Clemments from D.E.A. Special Agent Cook, who was assigned to the San Diego area. Cook further explained to Parsons that Clemments had admitted to working for a Houston-based cocaine distribution network which obtained Columbian cocaine from Florida.

Finally, the affidavit disclosed that Officer Martinez received a phone call later that day from his anonymous informer who said that "his source" said that Gant was about to leave for Florida to obtain a load of cocaine. Consequently, surveillance was again initiated. On October 29, 1980, defendant Schneider was seen in a black Cadillac Eldorado, license plates number VFV754, driving eastbound on Interstate 10 in the Houston area.[5] Two days later, the same vehicle was reported as being seen in the Houston area traveling west on Interstate 10.[6] The dusty vehicle was,

---

**4.** During the suppression hearing, Agent Parsons testified that the arrest occurred in August, 1980, at least two months prior to the issuance of the warrant.

**5.** The affidavit stated that the vehicle was seen "October 29 as it remained eastbound having crossed into Trinity County, Texas." However, as pointed out at the suppression hearing, Inter-

state 10 does not pass through Trinity County; Trinity County is due north of Harris County, not due east. Accordingly, the Court is left with the finding that the vehicle was seen traveling due east in the Houston area.

**6.** The affidavit stated that the vehicle was seen "driving west on I–10 from Federal road." However, since there was no evidence presented

thereafter, followed to a convenience store where Gant was seen making a phone call. Gant and Schneider, both appearing tired, then proceeded to the Gant residence which was located approximately five minutes from the convenience store. Two days later, agents executed a search warrant on Gant's residence in which they found five (5) pounds of 90% pure cocaine.

## Probable Cause

The threshold question for analysis is whether the magistrate, confronted with the affidavit and evidence before him, had probable cause for issuance of the search warrant for Gant's residence. The Court concludes that he did not.

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched, and the persons or thing to be seized.

U.S. Const.Amend. IV.

 Probable cause exists where "the facts and circumstances within the agents' knowledge, and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a crime had been or is being committed, and that seizable property can be found at the place or on the person to be searched." *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). It is well settled that a search warrant affidavit may be based upon hearsay. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Supreme Court set out a two-prong test for determining the validity of an affidavit based upon hearsay. It held that the affidavit must contain (1) some of the underlying circumstances from which the officer concluded that the contraband was where he claimed it was, and (2) some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable. The *Aguilar-Spinelli* test has now been discarded in favor of the "Totality of the Circumstances" approach as described in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

 When applying the "totality of the circumstances" test

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States, supra,* 362 U.S. at 271 [80 S.Ct. at 736].

*Gates,* 103 S.Ct. at 2332. Although the court affirmed that the elements of informer credibility and reliability remain highly relevant, under the totality of the circumstance approach they should not be understood "as entirely separate and independent requirements to be rigidly exacted in every case ... [R]ather ... they should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* at 2327, 2328. Deficiencies on one of the "prongs" may be "compensated ... by a strong showing as to the other, or by some other indicia of reliabili-

as to which federal road the affiant was referring, the Court is left with the finding that the

vehicle was seen traveling due West in the Houston area.

ty." *Id.* at 2329. Although a magistrate's determination of probable cause should be paid great deference, reviewing courts must still conscientiously review the sufficiency of affidavits on which warrants are issued. *Id.* at 2332.

The Fifth Circuit has recently spoken to the nexus requirement in *United States v. Freeman*, 685 F.2d 942 (5th Cir.1982). In *Freeman*, the Court stated:

(T)he fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime ... We have consistently held that facts must exist in the affidavit which establish a nexus between the house to be searched and the evidence sought. *E.g., United States v. Green*, 634 F.2d 222 (5th Cir.1981); *United States v. Gramlich*, 551 F.2d 1359 (5th Cir.), *cert. denied*, 434 U.S. 866 [98 S.Ct. 201, 54 L.Ed.2d 141] (1977); *United States v. Maestas*, 546 F.2d 1177 (5th Cir.1977); *United States v. Flanagan*, 423 F.2d 745 (5th Cir.1970). However, that nexus may be established either through direct observation or through normal inferences as to where the articles sought would be located.

*Freeman, Id.* at 949. The court concluded that one cannot simply infer that drugs will be located in a residence just because it is a residence and that more evidence is required to show a nexus between the drug

activity and the residence before a search warrant of the residence should issue.[7]

The search warrant affidavit in this case neither meets the totality of the circumstances test nor the *Aguilar-Spinelli* test.

■ The only statement which the affiant makes regarding the nexus between criminal evidence and the residence is in the last paragraph of the affidavit:

Lastly your affiant believes the cocaine to be inside said place based upon the informants having seen Gant and Carlos Ivan Orozco ... together at the said place on a prior occasion and surveillance has failed to show any place of greater relative security for the transactions to be carried on.

Indeed, other statements made in the affidavit discredit the probability that the contraband would be located in Gant's residence.[8] For example, according to the affidavit, "intensive surveillance of Gant" was carried out, yet "[a]ttempts to follow [him] often proved unsuccessful." Furthermore, the informant had stated that Gant "distributed the cocaine immediately upon arrival in Houston, because he did not want to risk a lengthy exposure to arrest." The magistrate could easily have concluded that the contraband was either distributed or located in a place other than the residence. Accordingly, the Court concludes that the affidavit provided no nexus between the alleged criminal activity and the residence.

**7.** In *Freeman*, the Court suggested that one might reasonably infer that documents such as "passports, identification papers and bank records" would "normally be kept at one's personal residence." However, the Court refused to find such an inference with regard to cocaine. *Id.* at 950–952.

**8.** The parties argued other grounds regarding the sufficiency of the affidavit. For example, defendant Gant argued that (1) no information was presented in the affidavit to show that either informant was a reliable source, that (2) the affidavit provided no indication of how and where the second informant obtained most of his information and did not show that the hearsay information was verified; and (3) the affidavit was based upon stale information since the description of Gant's drug related activities did not include information about the time at which

they occurred. However, the government points out, and the Court agrees, that much of the information was corroborated by the direct observation of the agents or by other unrelated informant's statements. For example: (1) Two unrelated informers stated that Gant had personalized license plates entitled "I'M RICH", (2) The informant said that Gant had a partner named "Carlos"; "Carlos" was later observed by agents to be seen with Gant; and (3) The informant said that Gant had a "runner" named Don Clemments; Don Clemments, using the alias "Richard Gant" was arrested in San Diego for possession of cocaine as he was boarding a plane for Houston. However, none of the corroborated statements evidenced a nexus between Gant's residence and the contraband and thus are irrelevant when considering the major infirmity of the affidavit.

Therefore, the affidavit was insufficient to support a finding of probable cause.[9]

## Good Faith Exception

■ The second issue for analysis is whether the good faith exception should be applied to the facts of this case where the search warrant and affidavit were insufficient to support a finding of probable cause. The Court concludes that it should not.

The Fifth Circuit set out the basic guidelines for applying the good faith exception to the exclusionary rule in *United States v. Williams*, 622 F.2d 830 (5th Cir.1980). In *Williams*, the Court held:

> [E]vidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized.

*Id.* at 840. Emphasizing that the exclusionary rule exists to deter willful or flagrant actions by police, not reasonable, good faith ones, the Court went on to say that the cost to society of applying the rule in such a case is too high and has few offsetting benefits. Citing *Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979), the court said that "suppression still results if officers allege a good-faith belief in a 'law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws' or in a law that violated a 'controlling precedent that [it] was ... unconstitutional.'" *Williams*, 622 F.2d at 843. Moreover, the court limited the application of the good faith exception saying that "[n]o warrant is involved here, hence nothing that we say applies to factual situations where one has been obtained", *Id.* at 840, n. 1, and "[e]xclusion of evidence seized without any probable cause is an entirely different question from suppression of evidence seized upon a good faith and reasonable belief in the existence of probable cause." *Id.* at 846.

The Fifth Circuit recently added to the good faith exception case law in *United States v. Mahoney*, 712 F.2d 956 (5th Cir. 1983). In *Mahoney*, the arrest warrant was found to be invalid on the ground that it did not identify the defendant with sufficient particularity. The court held that the exclusionary rule was inapplicable pursuant to the "good faith exception" since the actions by the law enforcement agents were taken in a reasonable and good-faith belief that they were legal. *Id.* at 956. However, in *Mahoney*, unlike in the case *sub judice*, there was an unchallenged finding of probable cause. Like *Williams*, the *Mahoney* Court limited the use of the good faith exception, saying that "[w]e leave for later the question of whether a good faith proviso to the exclusionary rule ought ever to tolerate an arrest or seizure without probable cause measured objectively." *Id.* at 960, n. 4; *see also United States v. Parker*, 722 F.2d 179, 183 n. 2 (5th Cir. 1983).

Although the *Gates* Court declined to address directly the issue of a "good faith" exception to the exclusionary rule, Justice White, in his concurring opinion, discussed the issue at some length. He reasoned that the exclusionary rule should be modified to allow the introduction of evidence obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment, but explained that in many instances, such as where the material presented to the magistrate is so clearly lacking in probable cause that no well-trained officer could reasonably have thought that a warrant should issue, the good faith exception should not apply.

---

**9.** Defendant Schneider complains also that there was no probable cause in the affidavit to link her with any criminal activity. The Court agrees. The affidavit mentions Schneider only briefly: that she was seen October 29, 1980, in a black Cadillac bearing Texas license plates VFV754, driving eastbound (see note 5, *supra*), and that she was seen two days later in the same automobile with Gant driving westbound (see note 6, *supra*). After applying either the *Aguilar-Spinelli* Test or the totality of the circumstances test, the Court concludes that there was no probable cause to issue a warrant for the arrest of defendant Schneider.

*Gates,* 103 S.Ct. at 2346 (White, J., concurring).

Here the Court is faced with a warrant lacking in probable cause, and no evidence to "cure" it of its infirmity. In *United States v. Hill,* 500 F.2d 315 (5th Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1135, 43 L.Ed.2d 404 (1975), the Fifth Circuit admitted evidence obtained in a search although the warrant, issued upon an insufficient affidavit, was invalid. Allowing the affidavit to be bolstered by the sworn testimony of the agent before the magistrate, the court said:

> [T]his situation furnished no occasion to apply the exclusionary rule to bar the evidence of Hill's criminality that was obtained in executing the warrant. Phillips acted properly in going to the magistrate and seeking a warrant. Magistrate Sear acted properly in calling for additional information to demonstrate credibility. Thus, the only error attributable to the procedure they followed is a technical one that would in no way serve the deterrent purposes of the rule.

*Id.* at 322.

In the suppression hearing held in this case, there were no facts presented which could bolster or cure the inadequate warrant and affidavit. The officers merely elaborated upon their "good faith reliance" upon a warrant which they did not even read. Such subjective good faith has been patently condemned as a rationale for applying the good faith exception to the exclusionary rule.[10] *Williams,* 622 F.2d at 848; *Mahoney,* 712 F.2d at 6705; *Gates,* 103 S.Ct. at 2344–2347. This Court, obedient to the mandates of the Fifth Circuit and the Supreme Court, cannot now apply the good faith exception to a situation in which there was no probable cause to search the residence of the defendant, where the precedent is well settled that a nexus must exist between the evidence desired and the place to be searched, where

the Fourth Amendment on its face condemns the search of a residence where no probable cause exists, and where the officers' actions were taken with only subjective good faith.

Finally, the Court believes that a deterrent effect is accomplished by the suppression of the fruits of the search in this case. Although field officers are not trained as legal technicians, this is not a case requiring a quick decision as in *Williams,* nor is it a case in which the actions of the officers fall along the "cutting edge of two legal doctrines" as in *Mahoney.* The legal precedent for establishing a nexus between the evidence sought and the place to be searched is well established. To ignore it now might well promote what the exclusionary rule was designed to prevent.

### Conclusion

Accordingly, the Court concludes that there was no probable cause to search the residence of defendant Gant, and that the good faith exception should not apply. Therefore, the motions to suppress are granted; all evidence seized pursuant to the execution of the search and arrest warrant on or about October 31, 1980, is to be suppressed.

### ORDER

Pending before the Court is government's motion for reconsideration of this Court's Order of January 24, 1984, in which defendants' motions to suppress were granted. Contending that the Court incorrectly assigned the burden of proof on it to establish the applicability of the "good faith exception" in this case, government asks the Court to either reverse its decision or stay its effect until the United States Supreme Court has ruled on the subject. Defendants submit that the burden was properly placed and oppose the motion to stay. After careful consideration of the memoranda and relevant law, the Court is

---

**10.** *Williams* requires that we also decide whether the officers' subjective good faith was "grounded in an objective reasonableness" and "based upon articulable premises sufficient to cause a reasonable, and reasonably trained, officer to believe that he was acting lawfully." 622 F.2d at 841, n. 4a.

of the view that the motion should be denied for the reasons discussed below.

## I.

Government cites *United States v. Minis*, 666 F.2d 134 (5th Cir.), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982), to support its first contention that the burden of proof to establish the applicability of the good faith exception was wrongfully placed upon it. Government contends further that it should have been defendants' burden to show a lack of good faith on the part of the arresting officers. The parties have not cited legal authority clearly dictating where the burden of proof should lie with regard to the good faith exception, and the Court's research has revealed none.[1] However, relevant law provides ample justification to affirm this Court's allocation of the burden upon the government.

 In general, a person who asserts that his fourth amendment rights were violated has the burden of establishing two requirements. First, that a search and seizure of that individual's person, house, papers or effects was conducted by an agent of the government. And second, that the search and seizure was "unreasonable". *United States v. Bachner*, 706 F.2d 1121, 1125 (11th Cir.1983); *United States v. Glasgow*, 658 F.2d 1036, 1044 (5th Cir. 1981); *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960). However, if the movant establishes an expectation of privacy[2] and that the search and seizure took place without a search warrant, then the burden of proof shifts to the government to establish that an exception to the search warrant requirement is applicable and that the search and seizure was a reasonable one. *United States v. Bachner*, 706 F.2d at 1126; *United States v. Harris*, 479 F.2d 508, 509 (5th Cir.1973); *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).

In the case at bar, defendants established that defendant Gant's home was searched and contraband seized by government agents pursuant to a search warrant found by this Court to be lacking in probable cause and, therefore, invalid as a matter of law. Thus, defendants satisfied their burden of proof as to the first two requirements. It follows, from the established line of fourth amendment case law, that the burden of proof should then shift to the government to establish that an exception to the warrant requirement existed and that the search and seizure was, in fact, reasonable. In this Court's view, the "good faith exception" would be yet one more exception which, if proved by the government, would save the evidence from the effects of the exclusionary rule. This the government did not do.

The Fifth Circuit in *United States v. Williams*, 622 F.2d 830 (5th Cir.1980) held that "evidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." *Id.* at 840. Though not reaching the allocation of the burden of proof on this issue, that court concluded that:

> Hencefore in this circuit, when evidence is sought to be excluded because of police conduct leading to its discovery, it will be open to the proponent of the evidence to urge that the conduct in question, if mistaken or unauthorized, was yet taken in a reasonable, good-faith belief that it was proper. If the court so

---

1. In *United States v. Williams*, 622 F.2d 830, 846, 847 (5th Cir.1980), the Fifth Circuit reserved for "another day," the "proper allocation of the burden of proof on this issue."

2. "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), citing *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980).

finds, it shall not apply the exclusionary rule to the evidence.

*Id.* at 846, 847. While it is not the district court's function to make law, it is its function to make findings of fact. Given the evidence provided at the suppression hearing in this case, this Court, either because of a lack of evidence presented or because of a lack of evidence in existence, could not make a finding, as government requested, that the conduct of the officers in question was taken in a "reasonable, good-faith belief that it was proper." Without such a finding, the Court was impelled to apply, and did apply, the exclusionary rule to suppress the evidence secured by the illegal search and seizure.

## II.

■ Next, government requests that the Court stay the effect of its ruling "until the Supreme Court has ruled on the subject." Government points out that there are two cases currently pending before the United States Supreme Court which present the issue identical to the one in the case *sub judice.* The Court is unpersuaded by government's argument and concludes that it would be unwise to stay this Court's ruling to await the decisions to be handed down in *United States v. Leon,* 701 F.2d 187 (9th Cir.), *cert. granted,* — U.S. —, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983) and *Massachusetts v. Sheppard,* 387 Mass. 488, 441 N.E.2d 725, *cert. granted,* — U.S. —, 103 S.Ct. 3534, 79 L.Ed.2d 159 (1983), as those decisions may have no relevance to the case at bar.

## Conclusion

The Court concludes that government was given ample opportunity at the suppression hearing to establish the applicability of the good faith exception to the case at bar. Not having done so, it can not now expect defendants to assume its burden of proof or await some future opinion of the Supreme Court which may or may not have particular relevance in this case. Accordingly, the Court is of the opinion that

government's motion to reconsider should in all things be denied.

It is so ORDERED.