**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No.  98-30630

UNITED STATES OF AMERICA,

Plaintiff -- Appellee,

VERSUS

ROBERT A. JONES,

Defendant -- Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

August 17, 1999

Before POLITZ, JOLLY, and DUHÉ, Circuit Judges,

JOHN M. DUHÉ, JR., Circuit Judge:

A jury convicted Robert A. Jones ("Jones") of one count of possession with the intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C.A. § 841(a)(1).  See 21 U.S.C.A. 841(a)(1) (West 1981).  Jones raises three issues on appeal. First, Jones argues that the cocaine seized from his car should be suppressed because Deputy Sheriff Picou lacked reasonable suspicion to stop him and because Deputy Picou was not properly commissioned under Louisiana state law.  Second, he argues the government presented insufficient evidence to support his conviction.  Third, he argues that the district court erred in failing to consider the

"safety valve" provisions of U.S.S.G. § 5C1.2 in imposing his sentence. We affirm Jones' conviction and sentence, holding that the stop was reasonable under the Fourth Amendment and that the evidence supports his conviction. We do not address the Defendant's sentencing argument, because his counsel conceded at oral argument that he does not satisfy the requirements of the "safety valve" provisions in U.S.S.G. § 5C1.2.

## BACKGROUND

At approximately 9:37 p.m. on June 12, 1997, Deputy Sheriff Picou observed Jones driving a 1995 Thunderbird on Interstate Highway 20 in Madison Parish, Louisiana. Deputy Picou followed in the left lane behind Jones who was driving in the right lane. Deputy Picou observed Jones abruptly change lanes, apparently to avoid construction, and momentarily cross the solid yellow line or "fog line" on the left. Deputy Picou stopped Jones, advised him he was being stopped for improper lane usage, and asked him for his driver's license and insurance. Jones explained that the insurance was in the name of Maria and Vanessa Rodriguez of El Paso, Texas because he was buying the car from his girlfriend, Maria Rodriguez. He said he was driving from El Paso, Texas to Atlanta, Georgia to visit his children for Father's Day. When Deputy Picou asked Jones if he had ever been convicted of any offenses or "been in trouble with the law," Jones replied no. Deputy Picou called in Jones' driver's license information to the

2

dispatcher noting that his Texas driver's license was issued only one day earlier. The criminal history check of Jones revealed that he had a prior federal drug conviction and had served a lengthy prison sentence. Deputy Picou returned from his car and asked Jones to exit the Thunderbird. He questioned Jones about his prior conviction and noted a large discrepancy between the amount of time Jones and the dispatcher said he had served.

After Deputy Picou issued Jones a warning ticket for improper lane usage and returned his license and documents, he asked Jones if he had any guns, knives or other contraband in his car. When Jones replied no, Deputy Picou asked if he could search his car. Jones consented to the search. While the preliminary search of the interior of the car and its trunk revealed only the odor of fabric softener, Jones began to fidget, appear nervous, and sweat. Deputy Picou then walked his drug dog around the vehicle, but the dog did not alert. While Deputy Picou was putting away the dog, Deputy Matthews arrived as backup. Deputy Picou observed that Jones had now sweated through his shirt. Relying on his knowledge that Thunderbirds have a large empty space beneath the stereo speakers, Deputy Picou removed the speaker cover from the driver's rear side speaker and noticed that one screw was missing although the speakers did not seem custom made. Deputy Picou unscrewed the remaining screws, removed the speaker, and found numerous bundles covered with gray duct tape in this space. Underneath the tape, the packages were covered alternately with fabric softener sheets

3

and mustard.  The Deputies also found bundles in the space beneath the other rear speaker.  The bundles contained 32.2 pounds of cocaine with an estimated $1.3 million street value.  Deputies Picou and Matthews placed Jones in custody at approximately 10:31 p.m.

Jones was convicted of possession with the intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C.A. § 841(a)(1) and sentenced to the statutory minimum of 240 months pursuant to 21 U.S.C.A. § 851.  See 21 U.S.C.A. § 841(a)(1), § 851 (West 1981).  On appeal, he argues the district court should have excluded the cocaine seized from the Thunderbird because Deputy Sheriff Picou did not have reasonable suspicion to stop him and because Deputy Picou was not properly commissioned in Madison Parish.  Additionally, he contends the evidence is insufficient to support his conviction.

**ANALYSIS**

I.  Seizure of the Cocaine

Jones contends the district court should have suppressed the cocaine seized from the Thunderbird because Deputy Picou did not have reasonable suspicion to stop him.  Additionally, he argues the stop is impermissible under the Fourth Amendment because Deputy Picou lacked the legal authority to stop him due to administrative deficiencies in Deputy Picou's commission.  We review the district court's factual findings on a motion to suppress for clear error

4

and its ultimate conclusion as to the constitutionality of the law enforcement action de novo. See United States v. Tompkins, 130 F.3d 117, 119-20 (5th Cir. 1997).

A. Administrative Deficiency in Deputy Picou's Commission

The Defendant argues the district court should have suppressed the cocaine seized from his car because the deputy sheriff lacked the legal authority to stop him for a traffic violation. The Defendant relies on two Louisiana statutes requiring a deputy sheriff to reside in the parish in which he is commissioned and requiring the bond of the deputy sheriff to be filed with the clerk of court. See La. Rev. Stat. Ann. 33:1432.1 (A)(1) and 33:1433(A)(3) (West Supp. 1999). While Deputy Picou had taken the oath of office, had received commissions from both Tensas and Madison parishes, and had bonds posted on his behalf by the Sheriffs of both parishes, the Sheriffs had not filed those bonds with the respective clerks of court. Additionally, Deputy Picou was not a resident of either parish. Relying on United States v. Di Re, 332 U.S. 581 (1948) (holding the legality of an arrest for a federal crime by state officers is determined by state law), Jones argues an arrest that is illegal under state law cannot be a reasonable seizure of the person under the Fourth Amendment.

The district court agreed that state law determined the legality of the arrest relying on United States v. Garcia, 676 F.2d 1086, 1089 (5th Cir. 1982), vacated, 462 U.S. 1127 (1983). As a result, the district court upheld the deputy sheriff's stop by

5

relying on Louisiana's "de facto officer" doctrine. Under the "de facto officer" doctrine, a public officer's acts "under color of authority," even though the authority may be legally defective, "are valid as to third persons and the public until the officer's title to office is adjudged insufficient." Perschall v. State, 697 So.2d 240, 261 (La. 1997) (citing State v. Johnson, 192 So.2d 135, 145 (La. 1966)). The government also relies on the "de facto officer" doctrine arguing that Deputy Sheriff Picou's act of stopping the Defendant was valid despite the administrative deficiencies of his commission. However, Louisiana courts have not yet extended this doctrine to police officers.

Because the district court erred in relying on Garcia, we need not resort to the "de facto officer" doctrine. Deputy Sheriff Picou's actions were proper under the Fourth Amendment. In Garcia, a Texas game warden stopped and arrested suspects after discovering marijuana in their trucks. See Garcia, 676 F.2d at 1087-88. The suspects argued the evidence seized from their vehicles should be suppressed because their arrest by the game warden was illegal under Texas law. See id. at 1089. Judging the legality of the suspects' arrest by state law, the court excluded the evidence as the fruit of an illegal arrest because the Texas game warden lacked the authority under Texas law to make such an arrest and Texas law did not embrace the good faith exception to the exclusionary rule. See id. at 1089-94. The Supreme Court vacated the court's decision in Garcia and remanded for reconsideration in light of United

6

States v. Ross, 456 U.S. 798 (1982).  See United States v. Garcia, 462 U.S. 1127 (1983).  Ross determined the scope of a warrantless search of a container in an automobile.  We have since held that:

> [b]y remanding Garcia for reconsideration in light of the fourth amendment standards announced in Ross, the Court perforce instructed that state law did not control the case and that the admissibility of evidence depends on the legality of the search and seizure under *federal law*.

United States v. Mahoney, 712 F.2d 956, 959 (5th Cir. 1983) (emphasis added).[1]  "The question that a federal court must ask" when state officials secure "evidence to be used against a defendant accused of a federal offense is whether the actions of the state officials violated the Fourth Amendment of the United States Constitution."  United States v. Walker, 960 F.2d 409, 415 (5th Cir. 1992).[2]  Walker held that the exclusionary rule was created to discourage violations of federal law rather than violations of state law. See id.  "Whether the Fourth Amendment has been violated is determined solely by looking to federal law on the

---

[1]Mahoney involved an arrest executed by Texas police officers pursuant to an arrest warrant that did not identify the suspect with sufficient particularity.  See Mahoney, 712 F.2d at 957-58. The district court suppressed the defendant's confession following his arrest because the officers did not satisfy any of the exceptions justifying a warrantless arrest and Texas law did not recognize a good faith exception to the exclusionary rule.  See id. On appeal, we held the search was valid pursuant to federal law relying on the good faith exception to the exclusionary rule set forth in United States v. Williams, 622 F.2d 830 (5th Cir. 1980). See id. at 962.

[2]Walker involved a warrantless arrest which violated Texas law. See Walker, 960 F.2d at 415.  We upheld the arrest because "probable cause existed . . . making it valid under federal law." See id.

7

subject." Id. (citing California v. Greenwood, 486 U.S. 35 (1988)). Because we must examine Deputy Picou's stop of Jones under federal law, the state law administrative deficiency in his commission as Deputy Sheriff does not affect our analysis.

B. Reasonable Suspicion or Probable Cause

Applying federal law to Jones' arrest as Mahoney and Walker teach, the stop and arrest are clearly sustainable under the Fourth Amendment. Deputy Sheriff Picou observed Jones' traffic violation, i.e. improper lane usage,[3] creating sufficient probable cause to support the stop. See Whren v. United States, 517 U.S. 806, 810 (1996)(holding "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); United States v. Castro, 166 F.3d 728, 734 (5th Cir. 1999). For these reasons, we hold that Deputy Picou's stop and subsequent arrest of Jones was proper under the Fourth Amendment.[4]

II. Sufficiency of the Evidence

Jones also challenges the sufficiency of the evidence

---

[3] La. Rev. Stat. Ann. § 32:79 provides that a driver must remain "as nearly as practical entirely within a single lane" and lane changes shall not be made "until the driver has first ascertained that such movement can be made with safety." La. Stat. Rev. Ann. § 32:79 (West 1963).

[4]While the Defendant does not dispute that he consented to the search of the Thunderbird, he argues that the consent was involuntary because it was the unattenuated result of Deputy Picou's illegal traffic stop. Because Deputy Picou's stop is permissible under the Fourth Amendment, we need not address this issue.

supporting his conviction.  He contends that the government's evidence did not establish beyond a reasonable doubt that he had dominion and control over the cocaine found in the Thunderbird. The standard of review for a sufficiency of evidence claim is whether, after viewing the evidence and the reasonable inferences which flow therefrom in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 317-18 (1979); United States v. Mulderig, 120 F.3d 534, 546 (5th Cir. 1997).

To prove possession of cocaine with the intent to distribute under 21 U.S.C.A. § 841(a)(1), the government must show (1) knowing (2) possession (3) with the intent to distribute.  See 21 U.S.C.A. § 841(a)(1) (West 1981); United States v. Gourley, 168 F.3d 165, 169 (5th Cir. 1999).  Constructive possession of a controlled substance may be shown by ownership, dominion or control over the illegal drugs or over the vehicle in which the drugs are concealed. See United States v. Skipper, 74 F.3d 608, 611 (5th Cir. 1997). The jury may infer knowledge of the presence of contraband from the exercise of control over the vehicle in which it is concealed.  See United States v. Shabazz, 993 F.2d 431, 441 (5th Cir. 1993).  If the substance is in a hidden compartment of the vehicle, as in Jones' case, additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge is required.  See United States v. Garza, 990 F.2d 171, 174 (5th Cir. 1993).  Circumstantial

9

evidence proving guilty knowledge may include nervousness, conflicting statements to law enforcement officials, and an implausible story. See United States v. Daiz-Carreon, 915 F.2d 951, 954 (5th Cir. 1990). While nervousness alone is insufficient, it may support an inference of guilty knowledge when combined with facts suggesting that the nervousness is derived from an underlying consciousness of criminal behavior. See Garza, 990 F.2d at 174.

Jones contends that he did not know the cocaine was in the car and that he had only borrowed the car from Maria Contreras (formerly Maria Rodriguez) for the trip to Atlanta. At trial, Maria testified that Jones had purchased the Thunderbird from her daughter and had sole control over the vehicle prior to the discovery of the cocaine. According to Maria, neither she nor her daughter had used the vehicle since the sale to Jones. Although Jones disputes the purchase of the car, the jury is free to judge the credibility of one witness over that of another. See United States v. Williams, 132 F.3d 1055, 1059 (5th Cir. 1998). Jones was unemployed, yet had $1800 in cash with him when he was stopped. He was dressed in a suit at 9:30 in the evening although he was driving from El Paso, Texas to Atlanta, Georgia. Deputy Picou testified that Jones grew nervous, sweated profusely, and avoided eye contact when asked if he would consent to the search of the Thunderbird. In the trunk, Deputy Picou found a suitcase with two locks on the zipper containing only one or two wadded up shirts. Additionally, Jones initially lied to Deputy Picou about the

existence of his prior drug conviction.  When confronted, he lied again about the length of time he served in prison.  Taken together, a reasonable juror could have concluded that this circumstantial evidence supports an inference of guilty knowledge. For these reasons, we affirm Jones' conviction.

## CONCLUSION

We affirm Jones' conviction holding Deputy Picou's stop was proper under the Fourth Amendment and the government's evidence sufficiently supports his conviction.


**AFFIRMED**

11