**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Victor Domingo GARCIA, Ruben Barrera-Saenz and Adan Montolla Mungia, Defendants-Appellants.**

**No. 81–2115.**

United States Court of Appeals,
Fifth Circuit.

May 28, 1982.

---

John M. Potter, Asst. U. S. Atty., Houston, Tex., Louis Fischer, Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BROWN, GOLDBERG and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

Adan Mungia, Victor Garcia and Ruben Barrera-Saenz appeal their convictions for the possession of [1] and conspiracy to distribute [2] marijuana. Appellants have challenged the admissibility of evidence discovered incident to a series of warrantless arrests made by a Texas game warden. We find that under Texas law, the game warden's warrantless arrests were illegal and that the district court erred in refusing to exclude the evidentiary fruits of those illegal arrests. Therefore we reverse.

### Facts

The arrests in this case occurred on the night of October 17, 1980. That evening, two Texas Parks and Wildlife Department employees, Christopher Huff and Hilario Saenz, had positioned themselves on a hill on the Rosa Ranch, near Rio Grande City, Texas. According to game warden Huff's testimony, they were on the lookout for violations of state gaming laws.

Huff testified that, using binoculars to scan the area, he spotted a large truck driving through a pasture on a private ranch road. According to Huff, the truck's lights were off while it was driving on the private road through the pasture, but when the truck turned onto Highway 3167, its headlights were turned on.

Huff testified that he had heard reports of stolen vehicles and drug smuggling in the area, and that he thought the truck he spotted might have been stolen, or carrying a load of marijuana or involved in cattle

C. H. (Neal) Duvall, Roma, Tex., for Saenz.

Richard H. Garcia, Edinburg, Tex., for Mungia.

Michael Kennedy, New York City, for Garcia, Mungia and Saenz.

1. 21 U.S.C. § 841(a)(1).

2. 21 U.S.C. § 846.

rustling. Therefore, Huff and Saenz decided to stop the vehicle, an 18-wheeled diesel truck with a tanker-trailer.

The driver of the truck was appellant Adan Mungia. Huff demanded that Mungia produce his driver's license. Mungia complied. According to Huff, Mungia then responded to a series of questions with what the game warden thought to be "evasive" answers. In addition, Huff thought that Mungia appeared to be nervous. Therefore, game warden Huff decided to search the truck. Huff climbed up the tanker-truck's ladder to the top of the tank, where he saw what he thought might be marijuana residue around the tank's entry hatch. When he opened the entry hatch, Huff noticed a strong odor of marijuana. In the interior of the tank were sacks which later turned out to contain marijuana.

Mr. Mungia was then handcuffed and placed in the game wardens' vehicle. Saenz remained with the tanker-truck while Huff and Mungia drove back down Highway 3167 to the spot where it intersected the private ranch road. At this intersection, Huff spotted a beige pickup truck emerge from the ranch road with its lights turned off. Huff stopped the beige pickup, ordered its three passengers—Victor Garcia, Ruben Barrera-Saenz and Angel Garza Soliz—out of the truck, and handcuffed Garcia and Barrera-Saenz ("Barrera") together. A search of the pickup truck by Huff revealed what appeared to be marijuana residue in its bed. Huff radioed the Starr County Sheriff's Department for assistance. As he did so, Garza-Soliz ran off into the brush.[3]

Two sheriff's deputies arrived. Garcia and Barrera were left in the custody of one deputy, while Huff and the other deputy followed the tracks of the tanker-truck

down the private ranch road into the pasture. In the pasture, they found a white pickup truck with a flat tire.[4] Huff testified that he saw marijuana residue in the area around the white pickup. In the meantime, several Customs Patrol officers had arrived. After Huff related the evening's events to them, the Customs Patrol officers also went into the pasture and examined the white pickup truck. The Customs officers testified that they found marijuana residue on the truck bed, bumper and tire.

Defendants were charged with possession of marijuana and with conspiracy to possess marijuana with the intent to distribute it. Each of the three defendants filed pretrial motions to suppress evidence which they contended had been illegally obtained. At the pretrial suppression hearing, defendants argued *inter alia* that under Texas law, a game warden lacked the authority to make an arrest for a non-gaming law violation, that their arrests were therefore illegal, and that the evidentiary fruits of the illegal arrests should not be admissable at trial.[5] The district court denied the motions to suppress, finding that game warden Huff had authority under applicable Texas statutes to arrest defendants.

The case went to trial before a jury. At the close of the Government's case, and at the close of trial, each of the defendants moved for a Judgment of Acquittal pursuant to Rule 29, Fed.R.Crim.P. The motions were denied. The jury found Mungia guilty of possession of marijuana, but found him not guilty on the conspiracy count. Garcia and Barrera were found guilty of conspiracy to distribute marijuana, but were acquitted on the possession charges.

---

3. Garza-Soliz remains at large.

4. Both Garcia and Barrera testified at trial, giving the following account of the evening's events: On the afternoon and evening of October 17, 1980 Garcia and Barrera were working together, tending to chores on Garcia's ranch. After work, Garcia was driving Barrera home in the white pickup truck when the truck had a flat tire. The pickup had no spare tire, so both Garcia and Barrera left the truck and began

walking. While walking, they spotted the beige pickup truck and flagged it down. The driver of the beige pickup, Garza-Soliz, agreed to give them a ride. Minutes later, Huff stopped the beige pickup containing Garza-Soliz, Garcia and Barrera.

5. It was also argued that there was no reasonable suspicion to justify the stop, nor probable cause for the search, of Mungia's vehicle.

Defendant Mungia, Garcia and Barrera now appeal, arguing that the trial court erred in denying their motions to suppress. Defendants Garcia and Barrera argue also that the district court erred in denying their motions for Judgment of Acquittal.

### Authority to Arrest

■■ The legality of a warrantless arrest, absent a specific federal statute, is determined by state law. *U. S. v. Di Re,* 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1947). The lawfulness of an arrest by state officers for a state offense is determined by state law, so long as that law is not violative of the federal Constitution. *Ker v. State of California,* 374 U.S. 23, 37, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726 (1963). When state officers arrest for a federal crime, the legality of the arrest is determined by the law of the state in which the arrest takes place, subject to federal constitutional standards. *E.g., U. S. v. Ible,* 630 F.2d 389, 392–393 (5th Cir. 1980); *U. S. v. Fossler,* 597 F.2d 478, 482 n.3 (5th Cir. 1979); *U. S. v. Lipscomb,* 435 F.2d 795, 798 (5th Cir. 1970), *cert. denied,* 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). Therefore, the validity of Texas game warden Huff's warrantless arrests of defendants Mungia, Garcia and Barrera will be analyzed under Texas law.[6]

At the pretrial suppression hearing, and once again on appeal, defendants have argued that outside of state parks, a game warden lacks statutory authority to make an arrest for any offense other than a gaming law violation. The district court overruled defendants' arguments, finding that Huff was a peace officer under Texas Code of Criminal Procedure, article 2.12,[7] and that as a peace officer, Huff had authority to arrest defendants. We must determine whether this is a correct reading of Texas law.

It is true that game wardens may be commissioned as peace officers under article 2.12(11) of the Texas Code of Criminal Procedure. Furthermore, article 2.13 of the Code of Criminal Procedure authorizes a peace officer to "arrest offenders without warrant in every case where he is authorized by law . . . ." However, our analysis of Texas law does not end here. We must go on to examine the statutory provisions dealing specifically with employees of the Parks and Wildlife Department, for in those statutes, we find clear language limiting the law enforcement authority of game wardens. A game warden's warrant does not extend universally. Thus, Texas Parks and Wildlife Code sec. 11.019(b)[8] states that game wardens "have the powers, privileges and immunities of peace officers *while on state parks . . . or in fresh pursuit of those violating the law in a state park. . . .*" (Emphasis added.)[9] The specific authority of game wardens to effect arrests is set forth in Texas Parks and Wildlife Code sec. 12.102. That section permits game wardens "the same authority as a sheriff to arrest *. . . in connection with violations of the laws relating to game, fish, and birds.*" (Emphasis added.)[10] *See also* Texas Parks

---

**6.** Courts should not address Constitutional questions unless it is necessary to do so. Therefore, we turn first to the state law questions for resolution of this appeal.

**7.** Tex.Code Crim.Pro.Ann. art. 2.12(11) (Vernon 1977).

**8.** Tex.Parks & Wild.Code Ann. § 11.019(b) (Vernon 1976).

**9.** The full text of section 11.019 is as follows:
§ 11.019. Employees as Peace Officers
(a) The director [of the Parks and Wildlife Department] may commission as peace officers any of the employees provided for in the general appropriations act.

(b) Employees commissioned under this section have the powers, privileges, and immunities of peace officers while on state parks or on state historical sites or in fresh pursuit of those violating the law in a state park or historical site.

**10.** Section 12.102 reads in full:
§ 12.102. Power to Arrest
(a) An authorized employee of the department [of Parks and Wildlife] has the same authority as a sheriff to arrest, serve criminal process, and require aid in serving criminal process in connection with violations of the laws relating to game, fish, and birds. The department may receive the same fees as are provided by law for sheriffs in misdemeanor cases.

and Wildlife Code sec. 13.109 (empowering peace officers commissioned under section 11.019 to enforce regulations governing parks and recreation areas); [11] *Opinion of the Attorney General* (1971, No. M–838) (authorizing game management officers of the Parks and Wildlife Department to assist in enforcing provisions of the Antiquities Code of Texas, Tex.Stat.Ann. art. 6145–9 [Vernon 1970]).[12]

Thus, the law enforcement authority of game wardens is limited both geographically and functionally. Game wardens have the powers of peace officers while on state parks or in hot pursuit of those violating the law in a state park. Parks and Wildlife Code sec. 11.019. This power presumably includes the authority to arrest without warrant on probable cause pursuant to article 14.03 of the Code of Criminal Procedure. Moreover, a game warden's law enforcement authority extends in some cases outside of state park lands. Thus, an employee of the Parks and Wildlife Department may "enter on any land or water where wild game or fish are known to range or stray" in order "[t]o enforce the game and fish laws of the state. . . ." Parks and Wildlife Code sec. 12.103.[13] However, not all transgressions are fair game for a warden: detection and prevention of gaming law viola-

tions is the *only* law enforcement function which Parks and Wildlife employees are authorized by the Code to perform outside of state park lands.

The Government argues that even if Huff's "normal powers" were limited to gaming law violations, his statutory status as peace officer gave him additional powers. They cite to article 14.03 of the Code of Criminal Procedure, which provides that peace officers may arrest without warrant "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony . . . or are about to commit some offense against the laws. . . ."

Article 14.03 is apparently an effort on the part of the Texas legislature to codify the ever-shifting formulae for describing circumstances which create probable cause to effect a warrantless arrest. *See, e.g., Lara v. State*, 469 S.W.2d 177, 179 (Tex.Cr. App.1971) (where officers had "probable cause" to suspect criminal activity, arrests were authorized under article 14.03), *cert. denied*, 404 U.S. 1040, 92 S.Ct. 724, 30 L.Ed.2d 732 (1971). We have found no Texas cases construing article 14.03 in relation to the specific limitations on the authority of game wardens set forth in the Parks and Wildlife Code.[14] Thus, we are forced to

---

(b) An authorized employee of the department may arrest without a warrant any person found in the act of violating any law relating to game, birds, or fish.

**11.** The regulations may govern:
    (1) the conservation, preservation, and use of state property whether natural features or constructed facilities;
    (2) the abusive, disruptive, or destructive conduct of persons;
    (3) the activities of park users including camping, swimming, boating, fishing, or other recreational activities;
    (4) the disposal of garbage, sewage, or refuse;
    (5) the possession of pets or animals;
    (6) the regulation of traffic and parking; and
    (7) conduct which endangers the health or safety of park users or their property.

**12.** In Texas courts, the Attorney General's opinions are not binding authority; however, they are persuasive. *Gonzales v. State*, 588 S.W.2d 355, 359 (Tex.Cr.App.1979).

**13.** The right to enter enclosed land includes the power to do so without the owner's permission and without a search warrant when a game warden knows that wild game or fish are likely to have strayed onto the land. *Opinion of the Attorney General* (1947, No. V–22). However, a game warden may not search without warrant a house or dwelling, *Opinion of the Attorney General, supra*; or a grain elevator, even when it was believed to contain illegally killed deer. *Opinion of the Attorney General* (1946, No. 0–7047).

**14.** In *Gonzales v. State*, 588 S.W.2d 355 (Tex. Cr.App.1979), the Court found illegal a warrantless search by game wardens which revealed marijuana on defendants' property. However, the decision was based on constitutional grounds; the Court did not reach the issue of how far a game warden's statutory law enforcement authority extends outside of state parks. Nevertheless, it is interesting to note that the State sought to justify the warden's search on the basis of Parks and Wildlife Code sec. 12.103, which allows department employ-

roam into other statutory territory in search of clues to the proper construction of these Code provisions.

██ The Code Construction Act[15] provides general rules for the interpretation of statutes.[16] Section 3.06 of the Act states:

> If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

Thus, the Act adopts a long-standing rule for the construction of statutes which are in *pari materia*. Statutes are in *pari materia* when they relate to the same person or class of persons, even though the statutes contain no reference to each other. 53 Tex. Jur.2d Statutes, sec. 186. When statutes are in *pari materia*, they should be read together, and any conflicts should be harmonized to give effect to all provisions of each statute. *Id.* When statutes in *pari materia* conflict and cannot be harmonized, the specific controls over the general. *Id.*

Turning to the statutes at issue, we find that article 14.03 of the Code of Criminal Procedure describes in general terms the types of circumstances giving rise to probable cause and thus justifying an arrest without warrant. Section 11.019(b) of the Parks and Wildlife Code states that game wardens "have the powers, privileges and immunities of peace officers *while on state parks....*" Clearly, article 14.03 is in *pari materia* with section 11.019(b): both describe the powers of peace officers. In such a situation, the courts are instructed to construe the statutes "so that effect is given to both." Code Construction Act, art. 5429b–2, sec. 3.06. Accordingly, article 14.03 must be interpreted as describing circumstances under which a game warden may arrest without warrant on probable cause *when the game warden is a peace officer;* that is, while he is on a state park. Outside of state parks, however, Parks and Wildlife Code, article 12.102 still controls: game wardens may arrest with or without a warrant only in connection with violations of the gaming laws.

This interpretation of the statutes is mandated as well by the rule that a specific statute controls over a general one. Article 2.12 of the Code of Criminal Procedure provides a comprehensive list of city and state employees who are, or may be commissioned as, peace officers.[17] Article 2.13

---

ees to enter any land in order to investigate gaming law violations, and *not* on the grounds that the wardens had general law enforcement authority by virtue of their status as peace officers.

**15.** Tex.Rev.Civ.Stat.Ann. art. 5429b–2 (Vernon 1981).

**16.** The Code Construction Act is applicable to provisions of the Code of Criminal Procedure. *E.g. Ex Parte Harrell*, 542 S.W.2d 169, 172 (Tex.Cr.App.1976); *Cuellar v. State*, 521 S.W.2d 277 (Tex.Cr.App.1975).

**17.** Article 2.12 provides in full:
The following are peace officers:
(1) sheriffs and their deputies;
(2) constables and deputy constables;
(3) marshals or police officers of an incorporated city, town, or village;
(4) rangers and officers commissioned by the Public Safety Commission and the Director of the Department of Public Safety;
(5) investigators of the district attorneys', criminal district attorneys', and county attorneys' offices;
(6) law enforcement agents of the Alcoholic Beverage Commission;
(7) each member of an arson investigating unit of a city, county or the state;
(8) any private person specially appointed to execute criminal process;
(9) officers commissioned by the governing board of any state institution of higher education, public junior college or the Texas State Technical Institute;
(10) officers commissioned by the Board of Control;
(11) law enforcement officers commissioned by the Parks and Wildlife Commission;
(12) airport security personnel commissioned as peace officers by the governing body of any political subdivision of this state that operates an airport served by a Civil Aeronautics Board certified air carrier;
(13) municipal park and recreational patrolmen and security officers; and

states that "it is the duty of every peace officer to preserve the peace *within his jurisdiction....*" (Emphasis added.) The jurisdictional limits of peace officers are set forth in the statutory provisions dealing specifically with the powers and duties of the individuals listed in article 2.12.

For instance, article 2.12(12) lists as peace officers "airport security personnel." Article 46g of the Municipal Airports Act [18] provides that any peace officer commissioned under the Act shall have all of the powers and duties of a peace officer *"while he is on the property under the control of the airport,* or in the actual course and scope of his employment." (Emphasis added.) Thus, airport security personnel have the power to act as peace officers, including the authority to arrest without warrant on probable cause pursuant to article 14.03 of the Code of Criminal Procedure. However, they have this power only when they are on airport property or otherwise engaged in airport security functions.

Similarly, article 2.12(9) of the Code of Criminal Procedure lists as peace officers "officers commissioned by the governing board of any state institution of higher learning...." Section 51.203 of Title 3, Higher Education,[19] states that an officer commissioned under that section is vested with all of the powers and privileges of peace officers *"while on the property under the control and jurisdiction of the institution of higher education* or otherwise in the performance of his duties." (Emphasis added.) Accordingly, campus security personnel may act as peace officers only on university property or in the course of their employment as campus security guards.

If we read article 14.03 of the Code of Criminal Procedure in the manner urged by the Government, article 14.03 would give all peace officers listed in article 2.12 the authority to arrest at any time and any place upon suspicion that any offense has been committed, notwithstanding the specific territorial and substantive limitations on their authority set forth in statutory provisions applicable to each category of peace officer. Such a reading is possible only if it can be demonstrated that "the manifest intent is that the general provision prevail" over the specific provisions. Code Construction Act, art. 5429b–2, sec. 3.06. We have found nothing in the statute or in the case law [20] which indicates that the general description of circumstances giving rise to probable cause for warrantless arrests set forth in article 14.03 was intended to repeal all specific territorial and/or substantive limitations on peace officers' law enforcement authority set forth in sections of the codes and statutes dealing with the powers and duties of the individual state and city employees listed in article 2.12. Accordingly, the interpretation compelled by the Code Construction Act is that individuals listed in article 2.12 have the powers and duties of peace officers, including the power to make warrantless arrests and the duty to keep peace, *only* when acting within their respective jurisdictional limits.

In some instances, the jurisdiction of peace officers is narrowly limited, as in the case of airport security personnel or university campus guards. For other categories of peace officers, such as Texas Rangers, the statutory grant of law enforcement authority is quite broad.[21] But for all article 2.12 peace officers, law enforcement jurisdiction is defined and limited by statute.

---

(14) security officers commissioned as peace officers by the State Treasurer.

**18.** Tex.Rev.Civ.Stat.Ann. art. 46d–1 *et seq.* (Vernon 1981).

**19.** Tex.Civ.Stat.Ann. tit. 3, § 51.203 (Vernon 1972).

**20.** *Green v. State*, 490 S.W.2d 826 (Tex.Cr.App. 1973), cited by the Government, is not dispositive. In that case, the Court held that a city policeman had the authority to arrest a person who had been observed driving while intoxicat-

ed inside of the city limits but was finally arrested outside of the city limits. *Green v. State* provides no answer to the question whether a statute speaking in general terms about the power to arrest should be read as overruling specific statutory limitations on the *types* of offenses *e.g.,* gaming law violations, for which a state employee may make arrests.

**21.** Tex.Civ.Stat.Ann. chapter 5, *Department of Public Safety,* art. 4413(11) (Vernon 1976) defines the jurisdiction and authority of Texas Rangers. Article 4413(11)(4) states that as

In the case of game wardens, article 11.-019(b) of the Texas Parks and Wildlife Code states that they have the power to act as peace officers while on state parks. In addition, game wardens may enter onto any land or water, and may make arrests, in connection with violations of the gaming laws. Beyond these enumerated powers, however, game wardens have no more law enforcement authority than any other private citizen of the state of Texas.[22] In sum, we do not read the Texas statutes as vesting in a game warden cosmic arresting authority.

### Defendants' Arrests

■ None of the events which led to the arrests of these defendants took place in a state park. Game warden Huff testified that at the time he first spotted the tanker-truck driven by defendant Mungia, Huff and Saenz were sitting on a hill on the Rosa Ranch, approximately 12.8 miles north of Rio Grande City and 100 yards off Highway 3167.[23] When Huff spotted the tanker-truck being driven along a private ranch road on the Rosa property without lights, he thought that criminal activity might be afoot. He did *not*, however, suspect that the truck was in any way connected with or involved in violations of the gaming laws. Rather, he was concerned that the truck might either be stolen or carrying a load of marijuana.[24] It was on this basis, and this basis alone, that Huff stopped the truck, arrested Mungia, and searched the tanker-

peace officers, Texas Rangers have the same powers and duties as sheriffs; except that, unlike sheriffs, Rangers "shall be authorized to make arrests and execute all process in criminal cases *in any county in the state.*" (Emphasis added.)

**22.** Of course, an employee of the Parks and Wildlife Department may, like any other private citizen, effect a citizen's arrest. A private citizen may arrest without warrant a person who has committed a felony or offense against the peace in the arresting person's presence or within his or her view. Texas Code of Criminal Procedure § 14.01(a) (Vernon's 1977).

In *Sanchez v. State*, 582 S.W.2d 813 (Tex.Cr. App.1979), *cert. denied*, 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980), two United States Border Patrol agents detained appellant after noticing him speeding and subsequently finding him stopped by the side of the road, emanating a strong odor of alcohol. The Court held that although the agents lacked authority to arrest or detain except for violations of the immigration laws, the detention of appellant was nevertheless a legal citizen's arrest for an offense against the peace (public drunkenness) pursuant to article 14.01. *Id.* at 815.

In the instant case however, the Government has not argued that the detention and arrest of appellants can be justified as a citizen's arrest under article 14.01. Indeed, no such argument can be made, since it is not contended that driving without lights on a private road is even illegal, much less a felony or an offense against the peace. Whatever suspicions of criminal activity may have been harbored by Huff, he did not testify that a felony was actually committed by any of the appellants in his presence or within his view. Compare *Sanchez v. State, supra; Romo v. State*, 577 S.W.2d 251 (Tex.Cr. App.1979) (member of Buffalo Springs Lake

Patrol could effect valid citizen's arrest outside of his jurisdiction when he personally observed defendant's erratic, drunken driving); *Heck v. State*, 507 S.W.2d 737 (Tex.Cr.App.1974) (private security guard and off-duty police officer could effect valid citizen's arrest of individual who they observed to be drunk in a public place); *McEathron v. State*, 163 Tex.Cr.R. 619, 294 S.W.2d 822 (1956) (airforce captain who observed defendant driving erratically and drinking from a bottle could effect a valid citizen's arrest).

**23.** Huff and Saenz were authorized to be on the Rosa Ranch without the owner's permission or a search warrant if they knew that wild game were likely to have strayed onto the land. Parks and Wildlife Code sec. 12.103; *Opinion of the Attorney General, supra* at n.5.

**24.** In the pretrial hearing concerning suppression of the evidence found as a result of Huff's stop of the tanker-truck, the following exchange between the district court judge and Huff transpired:

THE COURT: You didn't initially make the stop [of the tanker-truck] in connection with any purported violations of game laws?

WITNESS HUFF: No, sir.

THE COURT: Why did you say you stopped it?

WITNESS HUFF: Because the vehicle was coming out of a pasture without any lights.

THE COURT: Okay.

WITNESS HUFF: I had prior knowledge that there had been some stolen vehicles in that area. An 18-wheeler, for example. And also one thing I didn't say.

. . . .

WITNESS HUFF: And one other thing I didn't say, is that I had been talking with

trailer. Huff, as a game warden commissioned by the Parks and Wildlife Department, had no authority to stop this or any other vehicle outside of state park grounds for any reason other than suspected violations of the gaming laws. Because the stop of the tanker-truck and the arrest of Mungia were in no way connected with actual or suspected gaming law violations, the stop and arrest were illegal.

Similarly, the stop and arrests of Garcia and Barrera were unlawful. Huff was not investigating gaming law violations when he stopped the vehicle in which Garcia and Barrera were travelling. Rather, the trial court found that in stopping the pickup truck, Huff relied on his knowledge of the contents of the tanker-truck, and the fact that the pickup truck travelled without lights upon the same ranch road from which the tanker-truck had recently emerged. Because the stop and arrests by the game warden were not based on actual or suspected gaming law violations, the stop and arrests were illegal.

Having found that defendants were illegally arrested, it follows that the evidentiary fruits of those unlawful arrests should not have been introduced at defendants' trial. The Government contends, however, that even if the arrests in this case were illegal, the fruits of these arrests ought not be suppressed if game warden Huff believed in good faith that he had general law enforcement authority.

■ As we have stated, the legality of these arrests by a Texas game warden is determined by state law. *Ker v. State of California*, 374 U.S. 23, 37, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726 (1963); *U. S. v. Di Re*, 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1947); *U. S. v. Ible*, 630 F.2d 389, 392–393 (5th Cir. 1980); *U. S. v. Fossler*, 597 F.2d 478, 482 n.3 (5th Cir. 1979); *U. S. v. Lipscomb*, 435 F.2d 795, 798 (5th Cir. 1970), *cert. denied*, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). Under Texas law, an arresting officer's good faith does not suffice to purge an unlawful arrest of its illegality insofar as the exclusion of evidence is concerned. Thus in *Green v. State*, 615 S.W.2d 700 (Tex.Cr.App.1980), *cert. denied*, —— U.S. ——, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981), the court excluded evidence obtained as the fruit of an arrest made pursuant to an invalid arrest warrant. The majority did not accept the argument urged in dissent [25] that the evidence should be admissible by virtue of a good faith exception such as that set forth in *U. S. v. Williams*.[26] It is not this Court's role to engraft a "good faith" exception onto Texas jurisprudence. Thus in this case, where an arrest was unlawful under Texas statutes, the game warden's good or bad faith can have no bearing on our decision to exclude the illegally obtained evidence.

### Conclusion

The district court erred in finding that the warrantless arrests of defendants were authorized under Texas law,[27] and in failing to exclude the evidence obtained by virtue of those unlawful arrests. Accordingly, the

---

CPO (Customs Patrol Officer) Bill Matthews, say, about two days prior. We were discussing drug trafficking. He was discussing it with me and telling me to be sure and keep my eyes out for any kind of large vehicles, say, like 18-wheelers or anything; that they were using these types of vehicles to haul marijuana in.

THE COURT: And that is what led you to stop this vehicle?

WITNESS HUFF: Correct.

THE COURT: Okay. It had nothing to do with a game law violation?

WITNESS HUFF: No, sir, it didn't.

MR. MEDRANA [Attorney for the Government]: That statement is included in your statement; is that correct?

WITNESS HUFF: That is correct.

25. *Green v. State, supra* at 712.

26. 622 F.2d 830, 840–47 (5th Cir. 1980) (en banc), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981).

27. We find that defendants' arrests were illegal under state law. We do not reach the question as to whether the district court erred in finding that the arrests were supported by probable cause; nor do we decide whether there was sufficient evidence to sustain the convictions of appellants Garcia and Barrera.

convictions of appellants Mungia, Garcia and Barrera are

REVERSED.