**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Francisco Maria MOTA, Defendant–
Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan Maria MOTA, Defendant–
Appellant.**

**Nos. 91–50170, 91–50181.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1992.

Decided Jan. 8, 1993.

Maria G. Valdez and Joan Politeo Freeman, Deputy Federal Public Defenders, Santa Ana, CA, for defendant-appellant Francisco Maria Mota.

James L. Waltz, Laguna Hills, CA, for defendant-appellant Juan Maria Mota.

Christopher D. Johnson, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before POOLE, BRUNETTI and FERNANDEZ, Circuit Judges.

POOLE, Circuit Judge:

## I.

On November 25, 1990, brothers Juan Maria and Francisco Maria Mota were selling hot corn-on-the-cob from a shopping cart in Santa Ana, California. Officers Haynes and Carillo of the Santa Ana Police Department approached Juan Mota, and asked whether the corn cart was his. He told the officers that he ran the cart with his brother. Francisco Mota then approached and identified himself. The officers asked the brothers whether they had a business license to operate the cart. They admitted that they did not have a license, and the officers arrested and handcuffed them for operating without a valid business license in violation of Santa Ana Municipal Code § 21-6. The officers searched the brothers, and found 41 counterfeit twenty-dollar bills in their pockets.

The Motas were then taken to the Santa Ana police station, cited for operating a business without a license, and detained until Secret Service agents arrived to question them regarding the counterfeit money. Both appellants made incriminating statements at that time, and were subsequently charged with possession of counterfeit Federal Reserve notes in violation of 18 U.S.C. § 472.

In January, 1991, appellants joined in a motion to suppress the evidence seized and statements taken, arguing that the officers lacked probable cause to arrest, that the arrests were a pretext to allow the officers to conduct unlawful searches, and that the officers lacked authority under California law to arrest the appellants for a mere criminal infraction. The district court denied the motion to suppress on January 28, 1991, granted a motion for reconsideration, and then denied the motion to suppress for a second time on February 5, 1991. The district court found that the officers had probable cause to arrest the appellants, that the search was valid as a search incident to the arrest in order to look for evidence, and finally that the arrest was not a mere pretext to search for evidence of the crime of possession of counterfeit money.

Following the second denial of their motions to suppress, appellants entered pleas of guilty, conditioned upon their right to seek review in this court of the district court's denial of their motions to suppress. We now reverse.

## II.

Appellants argue that the Santa Ana police officers arrested them for oper-

ating without a valid business license as a pretext to allow them to search for evidence of counterfeit currency. "[A]n arrest may not be used as a pretext to search for evidence without a search warrant where one would ordinarily be required under the Fourth Amendment." *Williams v. United States*, 418 F.2d 159, 161 (9th Cir. 1969), *aff'd*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). A search is pretextual when "the motivation or primary purpose of the arresting officers" is to arrest a defendant "for a minor offense so as to allow police to search for evidence of some other unrelated offense for which police lack probable cause to arrest or search." *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir.1986). We review for clear error the district court's determination regarding the arresting officers' motives. *United States v. Espinosa*, 827 F.2d 604, 609 (9th Cir.1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988).

▮ Although the arresting officer did acknowledge that he was aware of counterfeit bills in the area, the district court credited his testimony that appellants were arrested exclusively as a result of their municipal code infraction of operating without a business license. Appellants argue that this finding was erroneous based solely on the fact that they were arrested for a minor infraction, and the subsequent search uncovered evidence of their commission of a felony. While these circumstances might raise a suspicion of pretext, they do not suffice to demonstrate that the district court clearly erred in its factual finding. *See United States v. Huffhines*, 967 F.2d 314, 317–18 (9th Cir.1992) (arresting officer's failure to follow ordinary cite and release procedure insufficient to show clear error in district court's conclusion that arrest was not pretext to search).

### III.

Appellants next contend that the search which uncovered the counterfeit bills was unconstitutional. The government defends the search as a valid search incident to the arrest of the appellants. In appraising the validity of a search incident to arrest, we "review de novo the application of established facts to legal standards." *United States v. Turner*, 926 F.2d 883, 887 (9th Cir.), *cert. denied*, ── U.S. ──, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991).

It is clear beyond question that a search incident to a lawful custodial arrest is an exception to the warrant requirement of the Fourth Amendment:

The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973). The *Robinson* court, however, declined to discuss the authority to search arising from an arrest "where [normally] the officer would simply issue a notice of violation and allow the offender to proceed." *Id.* at 236 n. 6, 94 S.Ct. at 477 n. 6.

▮ We have since held that, absent probable cause to search, a "custodial arrest" is "necessary to support a search incident to arrest." *United States v. Parr*, 843 F.2d 1228, 1230 (9th Cir.1988). In *Parr*, we reversed the defendant's conviction, finding that he had not been taken into custody, and that therefore he could not be searched incident to arrest.

▮ We must therefore determine, as an initial matter, whether appellants were "subjected to treatment that render[ed] [them] 'in custody'" at the time of the search. *Parr*, 843 F.2d at 1231. We believe that the Motas clearly had been taken

into custody. When searched, appellants had been handcuffed and notified that they were under arrest. [Tr. 2/5/91 at 16, 23]. Viewed from the perspective of the Motas, a reasonable person would have undoubtedly felt that he was under arrest. *See United States v. Mejia*, 953 F.2d 461, 467 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992). Thus, the search was clearly incident to a custodial arrest.

■ Our inquiry is not complete, however, for under *Robinson,* the arrest must be both custodial and lawful to support a search incident to that arrest. Consequently, we must next determine what standard is to be used in assessing the lawfulness of the custodial arrest.

■ We held in *United States v. Chavez–Vernaza,* 844 F.2d 1368 (9th Cir.1987), that application of the exclusionary rule in federal court should not be made to turn on state law. *Id.* at 1373. Instead, we concluded that the application of the exclusionary rule in federal court proceedings is a matter of federal law, and "evidence seized in compliance with federal law is admissible without regard to state law." *Id.* at 1374.

This does not necessarily mean, however, that state law will always be irrelevant in assessing the legality of a seizure as a matter of federal law. As we subsequently observed in *United States v. Wanless,* 882 F.2d 1459 (9th Cir.1989), federal law may require that searches and seizures be conducted in accordance with state law. *Id.* at 1464. In *Wanless,* for example, we noted that under federal law, inventory searches "must be conducted in accordance with the official procedures of the relevant *state or local* police department." *Id.* Thus, in evaluating the appropriateness of excluding evidence seized by state officials pursuant to an inventory search, federal courts must necessarily consider the lawfulness of the search as a matter of state law.

■ Similarly, whether an officer is authorized to make an arrest will ordinarily depend "in the first instance, on state law." *Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979). We have held in the context of a suit brought under 42 U.S.C. § 1983, that state law governing an arrest is irrelevant to determining whether the arrest deprived an individual of rights secured by the federal constitution or a federal statute. *See Barry v. Fowler,* 902 F.2d 770, 772 (9th Cir. 1990). But here the government would have us sanction an otherwise unconstitutional search on the basis of an arrest which is illegal as a matter of state law. Precedent forecloses such a holding, however, for it is clear that state law governing arrests is relevant to assessing the constitutionality of a search incident to that arrest. In *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), for example, the Supreme Court reversed a conviction based on evidence seized during a search incident to arrest. The Court held that the search incident to arrest was unlawful since the arresting officers had no authority to arrest under state law.

We note that other circuits have questioned the continued validity of *Di Re* as precedent in light of the Supreme Court's decisions in *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), and *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). *See United States v. Walker,* 960 F.2d 409 (5th Cir.1992); *United States v. Mahoney,* 712 F.2d 956 (5th Cir.1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3590, 82 L.Ed.2d 887 (1984); *United States v. Miller,* 452 F.2d 731 (10th Cir.1971), *cert. denied,* 407 U.S. 926, 92 S.Ct. 2466, 32 L.Ed.2d 813 (1972). The Tenth Circuit read *Elkins* as overruling *Di Re* and requiring that federal courts look only to federal law in determining the legality of an arrest. *Miller,* 452 F.2d at 733. This interpretation of *Elkins* overlooks subsequent Supreme Court authority, however, which reaffirmed the relevance of state law to the legality of an arrest as a matter of federal law. *See Ker v. California,* 374 U.S. 23, 37, 83 S.Ct. 1623, 1632, 10 L.Ed.2d 726 (1963). In addition, we believe the Tenth Circuit has read *Elkins* too broadly. The issue which the Supreme Court addressed in *Elkins* was whether "articles obtained as the result of an unreasonable search and seizure by state officers, without involvement of federal officers, [may] be introduced in evi-

dence against a defendant over his timely objection in a federal criminal trial." 364 U.S. at 208, 80 S.Ct. at 1439. *Elkins* thus re-examined the "silver platter" doctrine, which allowed the introduction of evidence illegally seized by state authorities so long as federal authorities were uninvolved in the seizure. *Id.* at 208 & n. 2, 80 S.Ct. at 1439 & n. 2. The Court concluded that:

> evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial.

*Id.* at 223, 80 S.Ct. at 1447. This observation, of course, fails to address the relevance of state law to the *reasonableness of* an arrest. And while it is true that the Court instructed that "[t]he test is one of federal law," *id.* at 224, 80 S.Ct. at 1447, our decision in *Wanless* illustrates that federal law may require state authorities to conform to state law. 882 F.2d at 1464.

The Fifth Circuit in *Mahoney* and *Walker* has also found state law irrelevant to whether an arrest is legal as a matter of federal law. In *United States v. Garcia,* 676 F.2d 1086 (5th Cir.1982), the Fifth Circuit applied state law in determining that the defendant's arrest had been illegal. *Id.* at 1094. The *Garcia* court then assessed the admissibility of the evidence seized subsequent to the arrest under the state's exclusionary rule, and concluded that under Texas law the evidence should have been excluded. *Id.* The Supreme Court granted certiorari, summarily vacating the judgment, and remanding the case for further consideration in light of *Ross.* *United States v. Garcia,* 462 U.S. 1127, 103 S.Ct. 3105, 77 L.Ed.2d 1360 (1983). The Fifth Circuit concluded, we believe correctly, that by remanding *Garcia* in light of *Ross,* the Supreme Court intended to instruct the Fifth Circuit "that the admissibility of evidence depends on the legality of the search and seizure under federal law." *Walker,* 960 F.2d at 415 (quoting *Mahoney,* 712 F.2d at 959). We disagree, however, that Supreme Court's action can be interpreted as foreclosing any consideration of state

law in determining the legality of an arrest. In other words, we construe the Supreme Court's action as a rejection of *Garcia's* reliance on state law governing the exclusion of evidence from court. *Ross* in no way established a federal law governing the legality of arrests, however, and the Supreme Court has subsequently indicated that state law governing an arrest is relevant to the constitutional analysis of the legality of that arrest.

In *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), for instance, the Court addressed the circumstances under which the Fourth Amendment prohibits police from making a warrantless arrest. *Id.* at 742, 104 S.Ct. at 2093. The Court held that the reasonableness of such an arrest is to be determined in light of the state's assessment of the gravity of the offense justifying the arrest, as expressed by the state's classification of the offense. *Id.* at 753–754, 104 S.Ct. at 2099–2100. We similarly hold that in evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest.

■ In this case, the State of California has abjured the authority to execute custodial arrests for offenses so minor that they are designated as infractions. California Penal Code § 836 (1985) enables a peace officer to "without a warrant, arrest a person ... [w]henever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." The scope of the arrest is restricted, however, by California Penal Code § 853.5 (1985), which provides that:

> In all cases ... in which a person is arrested for an infraction, a peace officer shall only require the arrestee to present his driver's license or other satisfactory evidence of his identity for examination and to sign a written promise to appear. Only if the arrestee refuses to present such identification or, refuses to sign such a written promise may the arrestee be taken into custody.

Thus, under California law, the arresting officers were without legal authority to take appellants into custody for the infraction of operating without a valid business

license in violation of Santa Ana Municipal Code § 21–6. *See also People v. Williams*, 3 Cal.App. 4th 1100, 1105 n. 1, 5 Cal. Rptr.2d 59, 61 n. 1 (1992) ("Only if the arrestee refuses to present written identification or to sign the written promise to appear may he be taken into custody" under Cal.Penal Code § 853.5).

Given the state's expression of disinterest in allowing warrantless arrests for mere infractions, we conclude that a custodial arrest for such an infraction is unreasonable, and thus unlawful, under the Fourth Amendment. Since the custodial arrest of appellants was invalid, the search should not have been exempted from the warrant requirement of the Fourth Amendment as a search incident to lawful arrest. Absent some other basis justifying the search, the evidence seized from appellants was unlawfully obtained, and should have been suppressed.

Accordingly, appellants' convictions are REVERSED. The case is REMANDED for proceedings consistent with this opinion.

FERNANDEZ, Circuit Judge, concurring:

I concur in the opinion, but write separately because I have misgivings about the condition in which we now leave the law.

I concur because it is eminently sensible to hold that a search incident to an illegal arrest cannot stand. I have misgivings because that produces some rather strange legal results.

We know that the legality of a search does not depend "on the law of the particular State in which the search occurs." *California v. Greenwood*, 486 U.S. 35, 43, 108 S.Ct. 1625, 1630, 100 L.Ed.2d 30 (1988). It is a question of federal constitutional law, even if the state gives greater protection.

We also know that the legality of an arrest does not depend upon the law of the particular state where the arrest occurs. That, too, is a question of federal constitutional law, even if the state gives greater protection. *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir.1990).

Here, however, we hold that the legality of a search following an arrest *does* depend on the law of the state where the arrest and search occur. It seems strange to say that can be so. More than that, it creates a curious trap for law enforcement officers.

For example, consider the officer in *Barry*. Under that decision, the officer violated no federal constitutional rule when he arrested Barry. Thus, he could not be sued for a civil rights violation. Had he then searched her, however, we now hold that he would have violated her constitutional rights and could have been sued. So, I suppose, a booking search or inventory search—or, as here, a search for contraband—would have been actionable even though the arrest was not. Of course, an officer who is plainly violating state law is hardly beatific and may have little call on our sympathy.

It might be that the difficulty is not with the logic of our opinion in this case. Perhaps it is either *Barry* or *Greenwood* that has the flaw. Still and all, there is little reason to add more gloom to the gloomy constitutional vista we have created. The decision here is a shaft of cleansing light. Thus, I join it.