UNITED STATES of America, Plaintiff,

v.

Rafael VELARDE, Defendant.

Cr. No. 93–00158 ACK.

United States District Court,
D. Hawaii.

June 7, 1993.

eral involvement. The government concedes that there was no federal investigative involvement in Velarde's case at the time of his encounter and arrest. However, the government argues that federal constitutional law standards apply even in cases without federal involvement, and that the officer's conduct was consistent with these federal standards.

For the reasons discussed below, the Court holds that federal law governs the admissibility of the evidence in this case, and that the evidence is admissible under federal constitutional law standards.

## FACTS

On September 3, 1992, Defendant arrived at the Honolulu International Airport on a flight from Los Angeles. Honolulu Police Department officers saw Defendant walk rapidly from the arrival gate to the baggage claim area, and observed him looking around suspiciously. The officers stopped Defendant at the sidewalk at the exit to question him. Defendant told the officers that he had come from Los Angeles and that he would be staying with his brother during his visit. Defendant showed the officers his one-way airline ticket, which the officers determined was paid for in cash. According to the government, Defendant's hands were trembling. The officers asked Defendant if they could search his bags, and Defendant agreed. During the search, the officers discovered two square, electric tape-wrapped blocks, which Defendant then admitted contained cocaine. Detective Nazarchyk sought and obtained a search warrant to search the two blocks, whereupon the cocaine was discovered. Defendant was then placed under arrest for possession of approximately one kilogram of cocaine.

Defendant was initially charged on September 23, 1992 with a state class "A" felony cocaine offense in *State v. Velarde,* 1st Cir. Crt.Cr. No. 92–2840. However, subsequently on October 28, 1992, the Hawaii Supreme Court issued its opinion in *State v. Quino,* 74 Haw. 161, 840 P.2d 358 (1992), which articulated new criteria for airport "walk and talk" consensual encounters under Hawaii State Constitutional law. The Honolulu Prosecu-

Michael K. Kawahara, Asst. U.S. Atty., Honolulu, HI, for plaintiff.

Alexander Silvert, Asst. Federal Public Defender, Honolulu, HI, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

KAY, Chief Judge.

## BACKGROUND

Defendant Rafael Velarde moves to suppress evidence obtained during a search of his bag at the Honolulu International Airport. Defendant argues that the state police officers did not have reasonable suspicion to stop and question him at the airport, and that his dialogue with the officers was not a consensual exchange. Defendant also argues that, in analyzing the Fourth Amendment issues in this case, the Court should apply Hawaii's more stringent exclusionary rule since the evidence was secured without fed-

tor's Office thereafter voluntarily dismissed the state case against Defendant.

Defendant was indicted by a Federal Grand Jury in the instant action for the same cocaine offense on January 27, 1993 and charged with possession of 500 grams or more of cocaine with intent to distribute. In this motion to suppress, Defendant does not materially dispute the facts relative to the encounter, interview, and subsequent consent search. Rather, the issue is whether this Court is to apply federal law, or the more stringent exclusionary rule mandated by Hawaii law.

## DISCUSSION

### A. *Controlling Law*

■ Defendant urges the Court to apply the stringent exclusionary rule that was recently announced in the Hawaii Supreme Court's *Quino* decision. *See, Hawaii v. Quino,* 74 Haw. 161, 840 P.2d 358 (1992). In *Quino,* the State Circuit Court originally denied defendant Quino's motion to suppress evidence obtained following an airport "walk and talk" encounter, and the defendant was convicted after trial. On appeal, the Intermediate Court of Appeals affirmed the Circuit Court's denial of the suppression motion. In its decision, the Intermediate Court of Appeals adopted federal constitutional standards as Hawaii law and held that the police office's conduct therein, measured under such federal standards, was proper. This decision reflected the law of Hawaii at the time that the instant case involving defendant Velarde arose on September 3, 1992.

In a published opinion subsequently issued on October 28, 1992, the Hawaii Supreme Court reversed Quino's conviction. In its *Quino* opinion, the Hawaii Supreme Court held that in order for an airport "consensual encounter" to be valid under Hawaii law, the officer or agent must identify himself as a police officer and request the passenger's permission to talk to him or her. In addition, the officer must affirmatively notify the passenger in advance that the officer is conducting a narcotics investigation and that the passenger is free to leave at any time. The court held that a person cannot be deemed to have voluntarily consented to a search where the officers conceal their investigative objective and fail to state that the passenger is free to leave.

In the case at bar, the investigating officers engaged in a "walk and talk" encounter much like the one described in the *Quino* decision. Therefore, if this case were governed by state law, it appears that the evidence in this case would have to be suppressed.

In arguing that state law applies, Defendant relies upon the Ninth Circuit's decision in *United States v. Henderson,* 721 F.2d 662 (9th Cir.1983). In *Henderson,* the court stated in dicta that information secured by state officers entirely without federal involvement which would be violative of state law may not be admissible in a federal court under federal law. *Id.* at 664. However, the *Henderson* language, to the extent it can be considered a holding, was overruled by the Ninth Circuit's subsequent opinion in *United States v. Chavez–Vernaza,* 844 F.2d 1368 (9th Cir.1987). Defendant acknowledges that *Chavez–Vernaza* contravenes the court's prior holding in *Henderson.* Nonetheless, Defendant argues that the Ninth Circuit has continued to invoke the principles of *Henderson* in the recent decisions of *United States v. Wanless,* 882 F.2d 1459 (9th Cir.1989), and *United States v. Mota,* 982 F.2d 1384 (9th Cir.1993). As explained below, the Court believes that Defendant has read too much into the *Wanless* and *Mota* decisions, and that *Chavez–Vernaza* controls.

In *Chavez–Vernaza,* 844 F.2d 1368 (9th Cir.1987), the defendant argued that the admissibility of evidence obtained by state officers without any federal investigatory involvement should be governed by state law rather than federal law. This was an issue of first impression before the Ninth Circuit. The court noted that in cases of joint federal-state investigations, the case law has consistently held that federal law governs admissibility determinations. *Id.* at 1372. (citing *United States v. Kovac,* 795 F.2d 1509, 1511–12 (9th Cir.1986); *United States v. Henderson,* 721 F.2d 662, 664 (9th Cir.1983); *United States v. Adams,* 694 F.2d 200, 201 (9th Cir.1982); *United States v. Hall,* 543

F.2d 1229, 1232 (9th Cir.1976)). The Court found no reason why that rule should be different in cases where an exclusively state investigation was involved but the case was prosecuted federally. *Id.* at 1374. The Court reasoned that if concerns of comity do not outweigh the federal government's interest in admitting evidence where federal and state officials act jointly, there is no reason to find these concerns controlling where state officials act alone. The court therefore held that evidence seized in compliance with federal law is admissible "without regard to state law." *Id.* at 1374. In so holding, the Ninth Circuit explicitly rejected the dicta in *Henderson,* and adopted the suggestion in *United States v. Joseph,* 829 F.2d 724, 728 n. 1 (9th Cir.1987), wherein the court had stated that "evidence obtained in accordance with federal law is admissible in federal court— even though it was obtained by state officers in violation of state law." *Id.* at 1373.

The *Chavez–Vernaza* holding that federal law applies holds true even if the state affords a higher degree of privacy protection to defendants. *See, United States v. Greenwood,* 486 U.S. 35, 43, 108 S.Ct. 1625, 1630, 100 L.Ed.2d 30 (1988) (legality of a search is a question of federal constitutional law, even if the state gives greater protection); *Barry v. Fowler,* 902 F.2d 770, 733 (9th Cir.1990) (legality of an arrest is a question of federal constitutional law, even if the state gives greater protection). The Ninth Circuit has continued to follow *Chavez–Vernaza. See, United States v. Baker,* 850 F.2d 1365, 1368 (9th Cir.1988); *United States v. George,* 883 F.2d 1407, 1412 (9th Cir.1989); *United States v. Ayers,* 924 F.2d 1468, 1478 (9th Cir.1991); *United States v. Brady,* 993 F.2d 177, 179 (9th Cir.App.1993).

However, without eroding the precedential value of *Chavez–Vernaza* and its progeny, the Ninth Circuit has held that it is sometimes necessary to look to state law. The cases that have so held are fully consistent with *Chavez–Vernaza.* The first case, *United States v. Wanless,* 882 F.2d 1459 (9th Cir.1989), was a case involving inventory searches conducted by state police officers. The *Wanless* court cited to *Chavez–Vernaza* and held that federal law applied. However, *federal* law requires that inventory searches must be conducted in accordance with the official procedures of the relevant state or local police department. Thus, in the type of search that was at issue in *Wanless,* federal law required that the search and seizure be conducted in accordance with state law. Because the officers in *Wanless* did not follow the inventory procedures established by state law, the inventory search was held to be improper as a matter of federal law. *Id.* at 1464.

The second case, *United States v. Mota,* 982 F.2d 1384 (9th Cir.1993), involved a search incident to an arrest. The court cited to *Chavez–Vernaza,* and held that federal law applied. However, the court also held that state law was still relevant since, in order for a search incident to an arrest to be valid under federal law, the arresting officer must have had authority to make the arrest. Authorization to make an arrest is, in turn, a matter of state law. Therefore, the court held that in evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest. *Id.* at 1388.

The case at bar is distinguishable from *Wanless* and *Mota.* Here, the officers were engaging in, at most, an investigatory detention or "Terry stop." [1] An investigatory detention is a brief seizure by police based on reasonable suspicion of criminal activity. *See, Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It is not an arrest. *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642–43, 77 L.Ed.2d 110 (1983). The legality of a "Terry stop" or investigatory detention is a question of federal constitutional law. Unlike inventory searches (*Wanless* ), and unlike searches incident to arrest (*Mota* ), investigatory detentions (or consensual searches) do not require a court to look to state law.

---

1. If the search is characterized as a consensual search, as opposed to an investigatory detention, the same analysis applies. There is nothing that requires a court to look to state law to determine whether behavior is consensual.

Instead, this is a case where there are two different standards, one state and one federal, that produce different results. In this regard, the case is quite similar to *United States v. Ayers*, 924 F.2d 1468, 1478 (9th Cir.1991) and *United States v. Brady*, 993 F.2d 177, 179 (9th Cir.App.1993). In *Ayers*, the Ninth Circuit considered whether federal or state law applied in determining the admissibility of evidence obtained during a warranted search of a residence. Under California law, the confidential informant data provided in the warrant affidavit was not reliable. Consequently, the warrant would not be supported by probable cause under California law. Under the "totality of the circumstances" test under federal law, however, the informant data was reliable and probable cause would exist. The *Ayers* court followed *Chavez–Vernaza* and held that federal law applied.

Similarly, in the recent case of *United States v. Brady*, the defendant argued that the district court, in evaluating whether a search warrant was supported by probable cause, should have used the stricter standard mandated by Washington law rather than the federally-mandated totality of the circumstances test. The defendant relied on the dicta in *Henderson* to support his argument. The Ninth Circuit rejected the defendant's argument, stating that the *Chavez–Vernaza* decision had expressly overruled the *Henderson* dicta. In confirming its earlier rulings that federal law controlled, the Ninth Circuit used strong language:

> Admissibility of this evidence in federal court is to be decided by federal law. State law is irrelevant. This issue has been resolved by us, and we may not revisit it now. We hold that *Chavez–Vernaza* governs this case, and we affirm the district court's holding that the federal law totality of the circumstances test applies "to evaluate whether probable cause exist-

ed for the issuance of the warrant." (citation omitted).

*Id.* at 179.

In the case at bar, as in *Ayers* and *Brady*, there are different standards under state and federal law for the particular type of search—in this case, an investigatory detention. Federal law applies, and there is nothing about an investigatory detention (or a consensual search) that requires a court to consider state law. Therefore, the Court concludes that federal law governs this case, and that the principles of *Quino* do not apply.

### B. Whether the Conduct Conformed to Federal Standards

■ Having determined that the case is governed by federal constitutional standards, the Court must next consider whether the officers' conduct was consistent with those standards.[2] Under federal constitutional law, a Fourth Amendment seizure is not implicated simply because a police officer approaches an individual and asks questions. *See, Florida v. Bostick*, —— U.S. ——, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); *United States v. Mendenhall*, 446 U.S. 544, 553–55, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Bostick*, —— U.S. at ——, 111 S.Ct. at 2386.

The Ninth Circuit recently articulated the standard for airport "walk and talk" searches, such as the one at issue here, in the decision of *Morgan v. Woessner*, 975 F.2d 629 (9th Cir.1992). The court stated that stops under the Fourth Amendment fall within three categories: (1) police may stop a citizen for questioning at any time as long as the citizen recognizes that he or she is free to leave; (2) the police may "seize" citizens for brief, investigative stops if supported by

---

**2.** It should be noted that Defendant's suppression motion expressly concedes that under federal constitutional standards, the evidence would be admissible:

> The defense recognizes that under the present state of the Federal law of the 9th Circuit that

this evidence is admissible but the defense raises the issue as an important matter to be decided because of the effect upon the State of Hawaii.

Defendant's Memorandum in Support of Motion to Suppress, p. 4.

"reasonable suspicion" (the "Terry stop"); and (3) the police may arrest a person if probable cause exists. *Id.* at 636. The first type of stop is not considered a seizure for Fourth Amendment purposes, while the second and third types of stops are seizures.

In determining whether a stop is a "seizure" or merely a consensual exchange, the Supreme Court has stated:

> [a] person is "seized" only when by means of physical force or a show of authority, his freedom of movement is restrained ... As long as the person to when questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification. *United States v. Mendenhall,* 446 U.S. at 353–54, 100 S.Ct. at 1877.

In analyzing whether the actions of the officers in this case constituted a consensual exchange or a "seizure," the "essential inquiry is whether the person stopped reasonably believed that he or she was not free to leave." *Morgan,* 975 F.2d at 636.

In determining whether a consensual exchange took place, the *Morgan* court looked at a number of factors, including whether the citizen conveyed a willingness to cooperate, any insistence by the officers that the citizen answer questions, whether the officer believed that the citizen was free to go, whether the officer advised the citizen that he was not under arrest and was free to go, whether the officer asked the citizen to accompany the officer to another location, and whether statements were made by an officer that indicated that the investigation had focused on a specific individual. *Morgan,* at 636–638.

▇ Turning to the facts of the case at bar, the Court finds that the "walk and talk" encounter was a consensual exchange under federal law. Detective Nazarchyk approached Defendant as he was walking on the sidewalk outside of the baggage claim area. He never blocked Defendant's path of travel. He identified himself as a police officer and asked permission to talk to Defendant. Defendant stated that he did not mind, and there was a smile on his face. He stopped walking and turned to face the officer. Detective Nazarchyk's partner, Officer Wong, was not involved in the sidewalk encounter until after Defendant had given his consent to search his bag. Officer Wong was quite some distance away and did not interfere with Defendant's freedom of movement. Defendant volunteered his identification without being asked to do so.

Applying federal constitutional standards to the facts of this case, the Court concludes that the officer's interview with Defendant constituted a consensual encounter, and not a seizure. Because there was no seizure within the Fourth Amendment, no federal constitutional rights were infringed.

▇ In addition, the Court finds that Defendant voluntarily consented to the search of his bag. Under *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), a consent search is proper if it is freely and voluntarily given and is not the result of duress or coercion. The voluntariness of the consent is determined by the totality of the circumstances. Further, the suspect need not have knowledge of his right to refuse. *See, Schneckloth,* 412 U.S. at 234, 93 S.Ct. at 2051; *United States v. Pace,* 709 F.Supp. 948, 953 (C.D.Cal.1989), *aff'd,* 893 F.2d 1103 (9th Cir.1990). Here, Detective Nazarchyk requested to search Defendant's shoulder bag. His words in asking for consent revealed no threat of force or coercion. Defendant gave his consent verbally, and also handed over his bag to the officer. Detective Nazarchyk's discovery of the tape-wrapped blocks of cocaine during the search was proper. Coupled with Defendant's admission that the blocks contained cocaine, Detective Nazarchyk had probable cause to arrest Defendant and search the blocks.

▇ The Court finds, in the alternative, that even if the "walk and talk" encounter was a "seizure" rather than a consensual exchange, it was supported by reasonable suspicion and was therefore valid. The Supreme Court has adopted a totality of the circumstances test for evaluating reasonable suspicion. *United States v. Sokolow,* 490 U.S. 1, 6–8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). The primary bases for reasonable suspicion are a police officer's personal ob-

servations. *See, United States v. Sharpe,* 470 U.S. 675, 682 n. 3, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (police observation of overloaded pickup truck with camper shell commonly used to transport illegal drugs driving in tandem with car and evading police provided reasonable suspicion to justify stop for suspected drug use). The courts afford considerable deference to the observations and conclusions of trained officers, reasoning that they are able to infer criminal activity from conduct that seems innocent to an untrained observer. *See, United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (officer's special training and experience permits inferences of criminal activity sufficient to create reasonable suspicion); *United States v. Trullo,* 809 F.2d 108, 111–12 (1st Cir.1987) (experienced officer's characterization of defendant's movement between vehicles in known drug trafficking area sufficient to establish reasonable suspicion). However, an officer may not rely on good faith, inarticulable hunches, or generalized suspicions to meet the standard of reasonable suspicion. *See, United States v. Kerr,* 817 F.2d 1384, 1387 (9th Cir.1987) (no reasonable suspicion when officer observed person loading boxes into truck in neighborhood with high burglary rate). The Supreme Court has held that when considered together, several innocent acts may amount to reasonable suspicion. *United States v. Sokolow,* 490 U.S. 1, 9, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989).

Turning to the facts of the case at bar, the Court finds that the officers had reasonable suspicion to stop and detain Defendant. When Defendant exited the airplane, he was looking around nervously. As he approached the exit door for the gate he quickened his pace, passing other passengers while continuing to look over his shoulder towards the gate area. Once inside the baggage claim area, Defendant was facing the carousel, but was scanning the area looking at other persons. Defendant stood near the carousel for about thirty seconds, then abruptly turned to his right and walked towards the exit door of the baggage claim area at a hurried pace.

When the officers approached Defendant and spoke to him, Defendant mumbled, and his hands were trembling. He had paid cash for a one-way ticket from Los Angeles, a "source" city for drug trafficking. When the officers asked Defendant where he was staying in Hawaii, Defendant responded that he was staying with his brother. In answer to the officer's question as to where his brother lived, Defendant produced a piece of paper with a handwritten notation of 378 North School Street and a telephone number with a "577" prefix, and the word "Foodland" written under the phone number, and stated that this was his brother's residence address and telephone number. From prior experience, Detective Nazarchyk recognized the prefix as one belonging to a telephone pager. Under the totality of the circumstances, the Court finds that the "walk and talk" encounter was supported by reasonable suspicion.

For the reasons discussed above, Defendant's motion to suppress evidence is denied.

IT IS SO ORDERED.